Howell, Judge,
delivered the opinion of the court:
Plaintiff brings this suit for the recovery of just compensation for its vessel the Zephyr, along with the spare parts *67 and expendable equipment, which, defendant requisitioned on July 24, 1942.
Liability is not denied and hence the only question before us involves the amount of just compensation to be made for the requisitioning of plaintiff’s vessel.
R. T. C. No. Eleven Corporation is the abbreviated designation for Reinauer Transportation Company Number Eleven, which is the plaintiff. On July 24, 1942, the date of requisitioning, plaintiff was the owner of the steel tanker vessel known as the Zephyr. The former name of the Zephyr was the Charlie Watson, which was built in 1920 for the Standard Oil Company of California by the Union Construction Company of Oakland, California, at an original cost of $746,592.54. The Charlie Watson was built as a tanker and was used throughout its life as a tanker. At the time of its original construction, the vessel represented an experiment in the use of Diesel power and was intended by the Standard Oil Company as a demonstration ship. She was built subject to inspection by the American Bureau of Shipping, to which Bureau her drawings and specifications were submitted. The scantlings of the vessel were heavier than usual for a ship of her size. The vessel was so designed in shape, weight, power, and propulsion as to make her fast and maneuverable. Twin screws enabled the vessel to operate in shallower waters than a single screw vessel of similar size. Accommodations for 38 persons were double the need for the minimum operating complement of 19 men employed by plaintiff in operating the ship.
In December 1939, the Standard Oil Company sold the vessel to Buckeye Tankers, Inc., for a sale price of $75,000. In 1940, title was transferred from Buckeye Tankers, Inc., to Allied Oil Transport Company, Inc. These two companies operated on the Great Lakes out of Cleveland, Ohio. On November 14, 1941, plaintiff purchased the Zephyr at Lo-rain, Ohio, for the price of $262,500. Immediately upon acquiring the vessel on November 14, 1941, plaintiff moved it from the Great Lakes just before the channels were closed to traffic on account of ice. Plaintiff expended $10,328.75 in moving the vessel from the Great Lakes to New York. In New York plaintiff installed certain additional equipment *68 on the vessel which was necessary to meet the requirements of the Bureau of Marine Inspection and Navigation for operation of the vessel in the coastwise' trade. Plaintiff also drydocked the vessel in New York and, while the vessel was in drydock, plaintiff expended $2,653 on repairs and better-ments at Bethlehem Hoboken Yard. The total cost of the vessel to plaintiff in New York and in making ready for operation in plaintiff’s business was $306,650.39 (excluding-surplus expendable equipment).
The vessel was requisitioned on July 24,1942, and later on or about July 9, 1945, the War Shipping Administration determined just compensation for the Zephyr to be in the. amount of $215,014.19. The War Shipping Administration offered to pay plaintiff this sum by telegram sent on or about July 11, 1945. On December 24, 1945, plaintiff rejected this offer and elected to receive 75 percent of the award. The War Shipping Administration has paid plaintiff the sum of $206,260.64 as follows: the sum of $56,350 on November 22, 1943; the sum of $45,080 on December 7, 1944; the sum of $104,830.64 on May 16,1946. In addition, the War Shipping Administration paid-to plaintiff the sum of $4,670.07' on February 22, 1944, in payment of the inventory value of consumable stores. -
There was an absence of sales of comparable vessels at or about the time of the requisitioning, but there were sales in 1941. -Accordingly, we may consider the 1941 sales as some evidence in endeavoring to reach the amount which would' have, in all probability, resulted from negotiations between a willing buyer and a willing seller at or about the time in question. United States v. Toronto, Hamilton & Buffalo Navigation Co., 338 U. S. 396.
Plaintiff has diligently provided the court with proof of all the factors ordinarily taken into consideration in the determination of - the-fair market value of a vessel. At the time of the requisition it was established that the -reproduction cost of the Zephyr in a shipyard on the East Coast of the United States would have been approximately $1,000,000: This reproduction cost, depreciated over a period of 22 years on diminishing balances, shows the following residual values:
*69 Percentage: Value
5_ $355, 886.84
4_ 448,084.41
3_ 562, 821.74
When the plaintiff acquired the Zephyr, insurance was placed on the vessel in the amount of $300,000, and at the time of requisition the insurance value of the vessel was not less than $300,000 nor more than $400,000.
Five witnesses (three called by plaintiff and two called by defendant) testified to opinion values of the vessel at the time of requisition. One of plaintiff’s witnesses based his opinion on reproduction cost depreciated, which he described as a theoretical value and arrived at an evaluation of $574,-900. Each of the other four witnesses described the evaluation given by him as market value. No one witness used the same approach as another, but each of the four arrived at, and expressed as his conclusion of value, a figure which he believed would probably have resulted from negotiations between a willing buyer and a willing seller at or - about the time of requisition. On the basis of considerable testimony offered by witnesses for both plaintiff and defendant we have found that the use of barrel capacity as a standard of comparison for small tankers is common in the trade and more nearly reflects its competitive relation to other tankers of smaller size than any other measure.
In Finding 15 we have set out in table form the names, barrel capacity, date of sale, and sale price of tankers of barrel capacity of 20,000 or less in operation on the Atlantic Coast' of the United States. In Table II, the six vessels which were sold in 1941 are described in detail. The vessel most comparable to the Zephyr was the Fuel Oil which was built about the same time as the Zephyr, but a comparison of the descriptive elements of the two vessels discloses that the Zephyr was superior in many respects to the Fuel Oil. The witnesses familiar with the two vessels testified that the Zephyr was a better ship primarily because of her greater speed, Diesel engines, and smaller crew. It will be noted that the Fuel Oil was sold in July of 1941 for a price of $400,000. Plaintiff’s expert, Mr. Barrie, compared the Zephyr with two *70 small tankers, the Fuel Oil sold in 1941, and the Sylvia requisitioned in 1942. He divided dollars (sale price) by barrels (cargo capacity) to determine a dollar value per barrel of cargo capacity. He then averaged the dollar value per barrel of cargo capacity of the two vessels and applied the result to the barrel capacity of the Zephyr and reached a valuation for the Zephyr of $446,000. Plaintiff’s expert, Mr. Dietez, compared the Zephyr with the Fuel Oil and estimated the value of the Zephyr was somewhere between the price for which the Fuel Oil sold in 1941, $400,-000, and its sound condition value after repairs, $528,000. Defendant’s witness Rutland compared the Zephyr with the Baeoi and the Fuel Oil on the basis of the gross tonnage of each vessel; i. e., he divided the dollars (sale price) by gross tons to determine a price per ton for each vessel. He then averaged the prices per ton and applied this average ($172.70) to the gross tonnage of the Zephyr, producing a result of $305,506. He also used another method wherein he adopted the cost of the vessel to plaintiff as computed by the FBI auditor and after making due allowance for reasonable property depreciation and mortgage interest during the period plaintiff owned the vessel, Mr. Rutland testified that its value was $305,603 as of the date of requisition. Defendant’s witness Sturm stated that in his opinion the fair and reasonable value of the Zephyr at the time of requisition was approximately $305,000. For the purpose of his comparison he cited four vessels: the Zephyr, the Fuel Oil, the Roustabout, and the George F. Downey. Thus, there is, as in all opinion testimony of this nature, a considerable variation as to the values which in the opinion of the witness would have constituted a fair and reasonable value at the time of requisition.
It was generally admitted that the value of the Zephyr was considerably enhanced when it was moved from the Great Lakes to the Eastern Seaboard and, furthermore, its value was enhanced as a result of the general price and wage increase in early 1942. It must also be noted that there had been so little trading in tankers of the type of the Zephyr that the requisition by the Government could not be said to be the *71 result of a comprehensive effort on the part of the Government to acquire tankers of this type at that time. Furthermore, the evidence discloses that there was only one other vessel ({he, Sylvia) actually requisitioned during 1942 (Finding No. 15). Accordingly, we find that while the value of the Zephyr was enhanced (1) between December 1939 and November 1941 and (2) between December 1941 and July 1942, we also find that the extent, if any, to which the enhancement in value of the Zephyr in either period was due to the causes necessitating the taking is negligible. Therefore, we are not called upon to make any deduction for the kind of enhancement within the meaning of Section 902 of the Merchant Marine Act of 1936, as amended, with due regard for the enhancement clause of Section 902 (a) as construed in United States v. Cors, 337 U. S. 325.
Taking into consideration all the testimony before us bearing upon the reasonable value of the Zephyr including all spare parts and expendable equipment on July 24, 1942, we find that the sum of $375,000 represents the fair market value of the Zephyr for which plaintiff is entitled as just compensation.
From this sum must be deducted $206,260.64 representing the total amount which has already been paid to plaintiff by the War Shipping Administration (Finding 11). Accordingly, plaintiff is entitled to judgment in the amount of $168,739.36.
Plaintiff is also entitled to recover, as a part of just compensation for delay in payment, a further sum measured by interest at the rate of four percent per annum on $375,000 from July 24,1942, until November 22, 1943; on the sum of $318,650 from November 22,1943, until December 7,1944; on the sum of $273,570 from December 7, 1944, until May 16, 1946; and on the sum of $168,739.36 from May 16,1946, to the date of payment.
It is so ordered.
MaddeN, Judge; Whitaker, Judge; Littleton, Judge; and Jones, Chief Judge, concur.